## DERRY *v.* ROCKINGHAM COUNTY.

In the fourth method of gaining a settlement, the assessor's valuation of the estate prescribed is not conclusive.

CLAIM, for the support of Mary and Esther Corning, children of David Corning. The parties agree that David Corning resided in Derry from 1859 until his death in 1867. He was taxed there for the years 1863, 1864, 1865, and 1866, upon real estate belonging to him, which was in each of those years appraised by the selectmen at the value of $100. He never gained a settlement in Derry unless by reason of having been so taxed, and Mary and Esther have no settlement in Derry unless they gained one through their father. At the time of their relief they were poor persons, residing in Derry, and standing in need of relief.

The defendants offer to prove that the real estate taxed to David was worth more than $150 during all the time it was taxed to him, and was sold by his administrator for $650. The plaintiffs object to the competency of the evidence, and claim that the action of the selectmen in appraising and taxing his real estate was judicial, and cannot be reviewed.

*G. C. & G. K. Bartlett*, for the plaintiffs. I. The duties of selectmen in fixing a valuation are judicial. *Hayes* v. *Hanson*, 12 N. H. 289. They are sworn to the faithful discharge of their duties, (1) to make an examination and take an invoice of the property within the town; (2) to appraise the same at its just and true value in money; (3) to hear evidence, if necessary, and to require an account; (4) to make a record of their proceedings; and no appeal is given from their decision, unless the appraisal is too high. This record, when made, is conclusive (*Barney* v. *Leeds*, 54 N. H. 142), and is the test intended by the legislature to be followed in determining whether a pauper has gained a settlement in the town. The statute does not grant them a settlement except upon payment of all taxes duly assessed upon them and their estate, that is, upon an estate valued by the selectmen at $150. The selectmen are bound on their oaths to assess the just and true value of the property, or what they in their official capacity upon examination find to be the value, and it is only after payment of taxes duly assessed by them on an estate of $150 that a settlement will be obtained. If the legislature had intended to limit this valuation to the assessment of taxes only, it would have been so expressed. So important a matter as this would not have been left open to the uncertainties of parol proof and the mischief which must result therefrom. In some particulars the duty of assessors is undoubtedly ministerial; but in fixing the value of taxable property, the power exercised is in its nature purely judicial. The value is to be estimated and determined by the assessors. This is

emphatically a judicial act. The writ of certiorari lies only to officers exercising judicial powers and to remove proceedings of that character. *Weaver* v. *Devendorf*, 3 Denio 117, 119; *People* v. *Mayor*, 2 Hill 9, 11; *In the matter of Mt. Morris Square*, id. 14, 21, and 22. Yet all the authorities agree that this writ lies to remove an assessment. See, also, to same point, *People* v. *Collins*, 19 Wend. 56.

II. The selectmen were not acting as officers of the town in appraising the property, but as public officers whose duties were prescribed by law (*Alger* v. *Easton*, 119 Mass. 77, 78), and as such the town had no power to direct, control, or restrain them. They were chosen by the town, and had important duties to perform in and for the town, and in this were town officers. But their duties are prescribed, regulated, and limited by law; and the voters and the town inhabitants are the very subjects over whom their authority is to be exercised. Their duties are regulated by provisions of law, and secured by the sanction of an oath. If they, through fraud or folly, appraise half the property in their town at one half its value only, the law provides no way by which the court may revise their proceedings and make a new invoice and assessment, and thus compel individuals to pay more than was assessed upon them. *Dewey* v. *Stratford*, 42 N. H. 290. How, then, can the town be bound or estopped, or its rights implicated, by the illegal acts of those who are not their agents, and over whose acts they have not nor can obtain any power? It appears, rather, that they are a class of officers constituted by law, whose official acts, done within the scope of their authority, are entitled to the presumption of law that *omnia rite acta sunt*. This presumption is conclusive as to the general acts done by such officers, unless when an individual can show himself aggrieved by some abuse of such authority; in which case he will have his remedy against the wrong-doer. *Berlin* v. *Bolton*, 10 Met. 120. " It would seem more consistent with correct principle, as well as more conducive to useful ends, to regard the acts of officers of the law, whose duties are secured and guarded by such sanctions, as the evidence which the law has provided of acts rightfully and properly done, so far as the condition and rights of other persons are established by and dependent upon them, than to throw them open to an inquiry, after a great lapse of time, which would be attended with great difficulty, and often lead to no satisfactory result." *Id.*, 121, 122.

There has been no suggestion of fraud or improper conduct on the part of the selectmen in assessing the real estate of David Corning, nor did the defendants offer to show any fraud. Neither David Corning, nor any person for him, has ever made any complaint that his valuation was too low; and as against outside parties, between whom and the town there is no equity, the assessment should be held conclusive.

*A. R. Hatch* and *J. Hatch*, for the defendants.

BLODGETT, J.   The fourth method of gaining a settlement prescribed by the statutes is, that " Any person of the age of twenty-one years, having real estate of the value of one hundred and fifty dollars, or personal estate of the value of two hundred and fifty dollars, in the town where he dwells and has his home, and paying all taxes duly assessed on him and his estate for four years in succession, shall thereby gain a settlement in said town." Gen. St., *c.* 73, *s.* 1, clause IV; Gen. Laws, *c.* 81, *s.* 1, clause IV.   For four successive years David Corning dwelt and had his home in Derry, was the owner of real estate therein of more than four times the prescribed value, and paid all taxes assessed on him and his estate.   He thus acquired a settlement in that town, to which his children became entitled under clause II.

The appraisal of David's real estate at $100 only by the plaintiff's assessors is not of controlling importance, and, at most, is but an evidentiary fact on the question of the true value of the property.   If admissible at all in this suit as evidence on the question, the appraisal is nothing more than a record of the assessor's opinions, and is *prima facie* evidence only.   The value intended by the statute is the actual market money value, to be ascertained in the ordinary way by an impartial tribunal.   Neither in terms nor by implication does the statute make the valuation of town officials conclusive; but its literal as well as its fair reading is to the contrary. And so is the established rule of practice in cases of this kind which has uniformly obtained in this state from the earliest period of its judicial history.   The question of the value of the pauper's estate in cases arising under the fourth mode has always been determined by the jury or by some other impartial tribunal; and to such a tribunal the parties are entitled in an action between municipalities in which value is a litigated question.   Selectmen being directly interested in pauper settlements are not such a tribunal.   In our view, this consideration of itself affords a sufficient reason why the construction heretofore given to the statute should not be changed.   But, however this may be, such a reason is afforded by the fact that, with full knowledge of this construction, the legislature have permitted the statute to stand unchanged since its original adoption in 1796, and thereby have unmistakably signified their approval of the interpretation which it has ever since received.

But other reasons suggest themselves, and especially if the consequences of the plaintiff's construction are considered.   It would not only enable them to take advantage of the selectmen's wrong in assessing the real estate in question at less than one sixth of its value, and thereby unjustly shift upon the defendants the burden of these paupers' support, without notice and with no opportunity to be heard, but it would greatly facilitate and make more common the illegal and prevalent practice of undervaluing real estate for purposes of taxation (*Cocheco Co.* v. *Strafford*, 51 N. H.

482), and still further increase the inequality now existing in the valuation of the several towns (report of the Board of Equalization for 1882). It would punish honest towns for their honesty, and reward dishonest ones for their dishonesty; it would remove from town officials the salutary safeguard of a probable reviewal of their wrongful acts by another tribunal, and make them judges, although disqualified by interest as jurors; it would introduce an exceptional rule, operating in pauper cases alone (which are now quite rare and likely to become more so in consequence of recent legislation), and thus tend to increase the inconsistent and incoherent character of the law, which ought to be, so far as it reasonably may be, a system of general and harmonious principles;—in a word, it would be an anomaly in the law, and one fraught with evil consequences only. And, moreover, whatever occasion there formerly may have been for the construction, on grounds of convenience and expediency resulting from the nature and difficulties of the proof, when the period of limitation in pauper settlements was half a century and upwards (Rev. St., c. 65, mode 10, s. 3, Laws 1861, c. 2482), has now largely ceased to exist by reason of the legislative action to which allusion has been made, and by which the liability of towns for the support of paupers has become limited to those who have acquired a settlement therein since the first day of January, 1870. This legislation deprives the decision in *Berlin* v. *Bolton*, 10 Met. 115, of much of the weight to which it would otherwise be entitled, and removes the only tenable ground for adopting the proposed rule and shutting out the truth; for, although the power exercised by selectmen in fixing the value of taxable property is, in its nature judicial, it is only by a liberal construction that their appraisal in a case affecting their personal interests in a pauper settlement can be regarded as a judicial proceeding affecting the interest of another municipal corporation having no notice or opportunity to be heard.; and if so regarded, it does not have the binding force of a judgment against the other corporation. If it is competent evidence against the county in this case (*Seavey* v. *Seavey*, 37 N. H. 125), it does not exclude the evidence offered by the defendants.

*Case discharged.*

SMITH, J., did not sit: the others concurred.